42 F.3d 1391
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul M. CROMER, Plaintiff-Appellant,
v.
JOSEPH BEHR & SONS INCORPORATED, Defendant-Appellee
Third-Party Plaintiff
v.
A.P. GREEN INDUSTRIES, INCORPORATED, and Certified
Industrial Technologies, Incorporated, Third-Party
Defendants.
 No. 94-1760.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 26, 1994.
Decided Dec. 9, 1994.
 
 Before GOODWIN,* COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Paul M. Cromer appeals a summary judgment in favor of Joseph Behr & Sons, Inc. the owner of a furnace in which Cromer was working as a bricklayer for the masonry contractor performing work on the Behr premises. Cromer brought this diversity claim for damages for injuries, contending that the negligence of one or more of Behr's employees was a cause of his injuries. We have jurisdiction under 28 U.S.C. Sec. 1332 and Sec. 1291, and we affirm.
 
 
 2
 Behr contracted with Certified Indstrial Technologies, Inc., as general contractor, to perform construction work on the Behr premises. A.P. Green Services became the masonry subcontractor. The contract documents, which are not rebutted by tendered proof in opposition to Behr's motion, support the finding that Behr agreed to furnish Green three laborers per shift to support the Green bricklayers in relining the furnace. Green relied on its own employees to install firebrick, but relied upon Behr's workers for such peripheral help as moving ladders, bringing materials to the masonry site, and clean-up. Behr's contract documents assigned rights and duties to Behr and to the general contractor. The terms of the contract, express and implied, were construed by the trial court in determining whether Cromer had a viable third-party claim against Behr for the negligence of Behr's employees, or whether Cromer was barred by the Illinois "loaned employee" doctrine which relegates the injured worker to his or her worker's compensation as if the injuries were caused by a fellow worker employed by the injured worker's employers.
 
 
 3
 Cromer was injured when he attempted to climb out of the furnace by stepping on a bucket, which maneuver he said was made necessary by the removal of a ladder by a Behr employee. The trial court did not reach the question whether any Behr employee was negligent in whatever act or omission affected the location of the missing ladder. Instead, the court determined that Behr had "loaned" the allegedly negligent laborer to Green, Cromer's employer, as a helper on the masonry subcontract, and therefore, any negligence that caused Cromer's injury was that of a fellow employee by operation of the "loaned servant" defense.
 
 
 4
 Under Illinois law, an employee in the general employment of a first employer may be loaned to a second employer for the performance of special work and become the employee of the second employer while performing the special services. A.J. Johnson Paving Co. v. Industrial Com'n, 412 N.E.2d 477 (Ill.1980).
 
 
 5
 Whether such a constructive transfer of employment occurs depends on whether the borrowing employer has the right to direct and control the employee with respect to the work performed and whether an employment contract, express or implied, existed between the employee and the borrowing employer. Id. at 480-81.
 
 
 6
 The test for determining the applicability of the loaned employee doctrine is "whether the employee becomes wholly subject to the control and discretion of the second employer and free from control of the first employer." Mosley v. Northwestern Steel & Wire Co., 394 N.E.2d 1230 (Ill.App.1979). The factors to be considered include the manner of hiring, the mode of payment, the nature of the work, the manner of direction and supervision of work, and the right to discharge. Id. (citation omitted). However, the "dominant factor" is the right to control the manner in which work is to be done, and the "most significant inquiry" is the extent to which the first employer delegated or released the right to control to the second employer. Id. (citation omitted). A distinction must be made between merely giving directions and actual control over the manner of doing work. Id. at 1238. A person cannot become an employee of a second employer unless the second employer has the power to discharge or fire the employee. Id. at 1237 (citing Richard v. Illinois Bell Telephone, 383 N.E.2d. 1242 (Ill.App.1978).
 
 
 7
 Cromer's strongest argument in attempting to avoid the "loaned employee" defense is that the record does not show that Green had the right to discharge any of Behr's laborers. For the purposes of applying Illinois law to the facts of this case, the trial court found that it was not necessary that Green have the right to discharge Behr's workers from their employment, but it was sufficient that Green had the right to ask Behr to remove an unsatisfactory worker and replace that worker with another. This right, the court found, was implied by the contracts and the nature of the performance of the work. This ruling was consistent with Russell v. PPG Indus., Inc., 953 F.2d 326, 331 (7th Cir.1992). The court concluded that the tests used by Illinois courts were substantially met, and found that if any of Behr's laborers assigned to the Green masonry job had been negligent, the negligence was that of a loaned employee and was chargeable to Green and not to Behr. We have examined the motion papers and the trial court's ruling and find the ruling to be consistent with Illinois law. Accordingly, the judgment is AFFIRMED.
 
 
 
 *
 The Honorable Alfred T. Goodwin, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, is sitting by designation